UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JASON JULIAN FORDE,

    Petitioner,

v.                                                         CASE NO. 6:04-cv-1357-Orl-18KRS

GARY M. THOMAS, et al.,

    Respondents.

_____

## ORDER

Petitioner initiated this action for habeas corpus relief pursuant to 28 U.S.C. section 2254 (Doc. No. 1). Upon consideration of the petition, the Court ordered Respondents to show cause why the relief sought in the petition should not be granted. (Doc. No. 3). Thereafter, Respondents filed a response to the petition for writ of habeas corpus in compliance with this Court's instructions and with the *Rules Governing Section 2254 Cases in the United States District Courts* (Doc. No. 8). Petitioner did not file a reply to the response.

Petitioner alleges five claims for relief in his habeas petition. All five claims allege that Petitioner was denied effective assistance of counsel in relation to his plea in that: (1) counsel failed to instruct Petitioner as to the elements of premeditation before advising him to enter a plea of nolo contendere; (2) counsel incorrectly advised Petitioner that he could be found guilty as a principal; (3) counsel failed to object to the prosecutor's inaccurate recitation of the facts of Petitioner's crime; (4) counsel coerced Petitioner to enter a plea of

nolo contendere and failed to move for dismissal of the attempted premeditated murder charge; and (5) counsel's cumulative errors prejudiced the Petitioner.

*Background*

On March 22, 2001, Petitioner was charged by information with one count of attempted first degree murder (with a weapon) in violation of Florida Statutes, section 782.04(1)(a)(1),[1] section 777.04[2] and section 775.087(1),[3] and one count of robbery with a deadly weapon in violation of Florida Statutes, section 812.13(2)(a).[4] (Appendix A at 9-10). Pursuant to a written plea agreement and with the advice of counsel, Petitioner entered a plea of nolo contendere to the count of attempted first degree murder. (*Id.* at 46-47). The State entered a nolle prosequi as to the robbery charge, and agreed to a sentence of ten years imprisonment, one year of community control, and one year of probation. (*Id.* at 46-47 & 50).

---

[1] Florida Statute, section 782.04, defines "murder in the first degree" as the "unlawful killing of a human being . . . [w]hen perpetrated from a premeditated design to effect the death of the person killed or any human being." Fla. Stat. § 782.04(1)(a)(1).

[2] Florida Statute, section 777.04, defines the offense of "criminal attempt" as follows: "A person who attempts to commit an offense prohibited by law and in such attempt does any act toward the commission of such offense, but fails in the perpetration or is intercepted or prevented in the execution thereof, commits the offense of criminal attempt." Fla. Stat. § 777.04(1).

[3] Florida Statute, section 775.087(1) covers the weapons offense.

[4] Florida Statute, section 812.13(2)(a) provides enhanced punishment for one who carries "a firearm or other deadly weapon" in the course of committing a robbery. Fla. Stat. § 812.13(2)(a).

2

According to the plea agreement signed by Petitioner, "the essential elements of the crime" and the maximum penalty were explained to Petitioner by his attorney, and Petitioner "read the information" and understood the charges against him. (Appendix A at 46). Further, the signed plea agreement states that Petitioner's attorney neither promised him anything to get Petitioner to enter the plea, nor pressured or forced him to enter the plea. (*Id.*). To the contrary, under the plea agreement, Petitioner indicated that he was "entering the plea voluntarily of [his] own free will and because [he] believe[d] it to be in [his] own best interest." (*Id.*).

During Petitioner's plea and sentencing hearing on July 8, 2002, the Petitioner confirmed to the Court under oath that he read, signed and understood the plea agreement. (Appendix A at 80). Petitioner further confirmed that he discussed his case with his attorney, he was entering the plea agreement "freely and voluntarily," and that no one "forced, threatened, or promised" him anything. (*Id.* at 81). Finally, Petitioner confirmed that he was satisfied with the services of his attorney. (*Id.* at 86).

The trial judge accepted Petitioner's plea, adjudicated him guilty of attempted first degree murder,[5] and sentenced him to a ten-year term of imprisonment, "to be followed

---

[5]The trial judge considered the State's recitation of the facts which would have been presented had Petitioner gone to trial:

> [T]he state would have shown through testimony of the victim in the case, Torrance Schmitt, as well as co-defendants Kevin Powell, Michael Anson, Fred Anson, Xavier Marriott, and Chantelle Winkworth, that the [Petitioner] was part of a group who had met the victim in this case on the day in question and formed a premeditated design to essentially lure him to a secluded location, in which they were going to commit a robbery. . . . Mr.

by one year of community control, to be followed by one year of probation." (Appendix A at 86).

Petitioner filed a notice of appeal, and his appointed counsel sought to withdraw and filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967). Petitioner then filed a *pro se* brief in which he raised seven issues – including the five ineffective assistance of counsel claims that are raised in the instant action. (Appendix B). The appellate court granted counsel's motion to withdraw, and on February 25, 2003, *per curiam* affirmed Petitioner's conviction and sentence. *Forde v. State*, 840 So. 2d 256 (Fla. 5th DCA 2003).

On March 26, 2003, Petitioner filed a motion for post-conviction relief pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure. (Appendix C). In his motion, Petitioner again raised the seven claims argued in his *pro se* appellate brief – five of which Petitioner asserts in this action. On July 31, 2003, the trial judge denied Petitioner's Rule 3.850 motion. On November 4, 2003, Petitioner sought leave to file a belated appeal, which was granted. (Appendix D). Petitioner then filed a *pro se* brief arguing that the trial court erred in denying his seven ineffective assistance of counsel claims. On March 9, 2004, the

---

> Blakes and [Petitioner] were the main players in the sense that they had the crowbar as well as the broomstick in the case, which they used to – in [Petitioner's] case, used a crowbar to repeatedly strike the victim . . . in and around his head, neck and shoulder area, leaving him with over 20 scars, which are permanent, [they] beat him repeatedly in the skull until he lost consciousness, thinking that they were leaving him for dead when they left the scene, in which they took, I believe $12 in United States currency as well as a stereo.

(Appendix A at 82-83).

4

appellate court *per curiam* affirmed the trial court's ruling. *Forde v. State*, 869 So. 2d 569 (Fla. 5th DCA 2004).

On April 5, 2004, Petitioner filed a timely petition for writ of habeas corpus in this Court. (Doc. No. 1).

## *Analysis*

Petitioner avers that he received ineffective assistance of counsel because of the following: (1) counsel failed to advise Petitioner regarding the element of premeditation; (2) counsel incorrectly advised Petitioner that he could be found guilty as a principal; (3) counsel failed to object to the prosecutor's inaccurate recitation of the facts of Petitioner's crime; (4) counsel coerced Petitioner to enter a plea of nolo contendere and failed to move for dismissal of the attempted premeditated murder charge; and (5) counsel's cumulative errors prejudiced the Petitioner. Petitioner raised these claims in his motion for post-conviction relief, and the trial court denied them on the merits. The state appellate court affirmed the denial.

Section 2254(d) of Title 28 provides as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

5

Therefore, § 2254(d) requires the Court to make two types of judgments in the process of adjudicating legal issues: (1) the Court must decide whether there was a qualifying state court decision; and (2) if so, the application should not be granted with respect to the claim unless the state court decision was (a) contrary to, or involved an objectively unreasonable application of, a clearly established United States Supreme Court decision or (b) based on an unreasonable determination of the facts. *McLee v. Angelone*, 967 F. Supp. 152, 156 (E.D. Va. 1997), *appeal dismissed*, 139 F.3d 891 (4th Cir. 1998).

In order to determine whether there was a qualifying state court decision, the Court must consider whether there was (1) a state court adjudication, (2) on the merits, (3) in formal state court proceedings, (4) that resulted in a decision. *McLee v. Angelone*, 967 F. Supp. 152, 156 (E.D. Va. 1997), *appeal dismissed*, 139 F.3d 891 (4th Cir. 1998). As evidenced by the record, the state trial court adjudicated each of Petitioner's claims in formal proceedings and issued a decision denying the claims on the merits. Thus, the Court concludes there was a qualifying state court decision as to each of Petitioner's claims.

Having determined that the state court determination was a qualifying decision, the Court must next consider the "contrary to" and "unreasonable application" components of the statute. In *Bell v. Cone*, 122 S. Ct. 1843, 1850 (2002), the United States Supreme Court discussed the meaning of "contrary to" and "unreasonable application" as used in 28 U.S.C. § 2254(d):

> As we stated in *Williams*, § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases,

or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in *Williams* that an unreasonable application is different from an incorrect one.

Utilizing the standards set forth in *Bell* and *Williams*,[6] this Court next must consider whether the state court applied a rule that contradicts the governing law set forth in the cases of the United States Supreme Court. If not, this Court must ask whether the state court considered a set of facts materially indistinguishable from a decision of the United States Supreme Court and arrived at a different result. If the first two inquiries are negative, then this Court must determine whether the state court's application of clearly established federal law was objectively reasonable.

At the outset, the Court notes that in assessing Petitioner's ineffective assistance of counsel claims, the state trial court utilized the standard set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). (Appendix D at 9). Thus, as to each of the Petitioner's claims, the first inquiry must be answered in the negative.[7] Furthermore, there is no indication that the results reached by the state court was at odds with any United States Supreme Court case which considered "materially indistinguishable

---

[6]*Williams v. Taylor*, 529 U.S. 362 (2000).

[7]As in *Bell*, "the state court correctly identified the principles announced in *Strickland* as those governing the analysis of [Petitioner's ineffective assistance of counsel] claim." *Bell*, 122 S. Ct. at 1852.

7

facts"; therefore, the second inquiry must also be answered in the negative as to each of Petitioner's claims. Finally, as explained below, the Court is unable to say that the state court's application of clearly established federal law was objectively unreasonable with regard to any of Petitioner's claims.

### *Ineffective Assistance of Counsel*

In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court established a two-part test for assessing claims that counsel rendered ineffective assistance during criminal proceedings. In *Hill v. Lockhart*, 474 U.S. 52 (1985), the United States Supreme Court held that "the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel." *Id.* at 58.

The prejudice prong of the *Strickland* test requires Petitioner to show that the deficient performance prejudiced the defense. *Strickland* 466 U.S. at 687. Specifically, in the context of a plea, Petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59 (footnote omitted). Only if the Petitioner can establish the prejudice prong of the *Strickland* test, should the court consider whether counsel's performance was deficient under the first prong of *Strickland*. *See Alvord v. Wainwright*, 725 F.2d 1282, 1289-90 (11th Cir. 1984) (holding that when no prejudice shown, there is no need to address a claim that counsel was deficient); *see also, Grayson v. Thompson*, 257 F.3d 1194, 1225 (11th Cir. 2001) ("In this case, we need not decide whether counsel's performance was

8

in fact deficient because Grayson so clearly fails to satisfy the prejudice prong of the Sixth Amendment analysis.").

The performance prong of the *Strickland* test requires that Petitioner demonstrate that counsel's performance was deficient and "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. In assessing the challenged performance, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonably professional assistance. *Id.* at 689-90. As observed by the Eleventh Circuit Court of Appeals, the test for ineffective assistance of counsel:

> has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight. *Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992) (citation omitted). Under these presumptions and rules, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between."[8] *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994). This is not one of those cases.

---

[8]In short, "a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 690; *Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir. 1989).

*Claim One*

In his first claim, Petitioner alleges that his counsel was deficient in failing to instruct Petitioner on the element of premeditation before advising him to plead nolo contendere. (Doc. No. 1). Specifically, Petitioner alleges:

> In an effort to get the [Petitioner] to plead nolo contendre [sic] to the alleged charges instead of going to trial, counsel persuaded the [Petitioner] that if he went to trial, he would be found guilty of attempted murder by way of the felony murder doctrine.[9]
>
> . . .
>
> Had it not been for counsel's deficient performance, there exists a reasonable probability that the outcome of the proceedings would have been different being that had counsel advised the [Petitioner] of the element of premeditation, the [Petitioner] would have rejected the plea offer and elected to proceed to trial.

(Doc. No. 1, at 5 & 17).

First, Petitioner's contention that his counsel did not advise him of the element of premeditation is contrary to Petitioner's written plea agreement and his sworn statements. According to the plea agreement, "the essential elements of the crime" and the maximum penalty were explained to Petitioner by his attorney, and Petitioner "read the information" and understood the charges against him. (Appendix A at 46). During Petitioner's plea and sentencing hearing on July 8, 2002, the Petitioner confirmed to the Court under oath that

---

[9] Petitioner's recitation of his attorney's advice is consistent with *Fleming v. Florida*, in which the Florida Supreme Court explained the element of premeditation in relation to attempted first degree murder: "[T]he offense of attempted first degree murder requires a premeditated design to effect death. In cases where the alleged "attempt" occurs during the commission of a felony, however, the law presumes the existence of premeditation, just as it does under the felony murder rule." 374 So. 2d 954, 956 (Fla. 1979).

10

he read, signed and understood the plea agreement. (*Id.* at 80). Petitioner further confirmed that he discussed his case with his attorney, and he was satisfied with the services of his attorney. (*Id.* at 81 & 86). Thus, claim one is directly contradicted by Petitioner's written plea agreement and his sworn statements.

As noted above, this Court cannot find that the state court's decision rejecting Petitioner's claim that his attorney provided ineffective assistance in failing to instruct Petitioner on the element of premeditation was "contrary to" the governing legal authority.[10] Furthermore, the Court is unable to say that the trial court's application of *Strickland's* prejudice prong was objectively unreasonable. "[A]n unreasonable application is different from an incorrect one." *Bell*, 535 U.S. at 694. This Court may not grant the writ simply because it determines that the state court erroneously or incorrectly applied the correct governing law. Relief is only warranted if the application was unreasonable. *Id.* Under this demanding standard, the state court's determination that Petitioner did not suffer prejudice was reasonable.

In denying Petitioner's claim, the state court held that Petitioner could not establish the prejudice prong of the *Strickland* test because "the State could have amended the information . . . and charged him with attempted felony murder." (Appendix D at 10 (concluding that Petitioner "fails to establish any prejudice in counsel's failure to advise him on the element of premeditation, which need not have been proven had the State

---

[10]The Court notes that a state court is not required to cite Supreme Court cases or even be aware of the cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002).

11

decided to pursue a conviction for attempted felony murder.")). In so holding, the state trial court noted the Petitioner's concession that the State could have properly charged him with attempted felony murder. (*Id.*) Indeed, Petitioner made repeated concessions that the facts of the case supported a charge of attempted first degree felony murder:

> Even though the facts are undisputed and the State could have charged the [Petitioner] pursuant to 782.051 [attempted felony murder], the State failed to do so. Instead, the State charged the Defendant with the non-existent offense of Attempted First Degree Felony Murder. (Appendix C at 9-10 (citing *State v. Gray*, 654 So. 2d 552 (Fla. 1995)).[11]
>
> [A]ll the witnesses and evidence to the alleged crimes pointed to that fact that an "Attempted Felony Murder" occurred and not that of "Premeditation." (*Id.* at 12).

(Appendix C at 9) (admitting that "[t]he facts of the case are undisputed. . . . [T]he [Petitioner] and co-defendants formulated a plan to rob the victim. During the course of that robbery, the victim was severely injured."). Given Petitioner's concessions, and the facts of this case, it was not unreasonable for the state court to conclude that the result of the case would not have been different had Petitioner's counsel advised him on the element of premeditation. In light of the foregoing, the Court finds that Petitioner cannot prevail on his first claim.

---

[11]Petitioner apparently has the incorrect understanding that attempted first degree felony murder is not a crime under Florida law. Although the Florida Supreme Court did so hold in *State v. Gray*, 654 So. 2d 552 (Fla. 1995), just one year after the *Gray* decision, the Florida legislature enacted a law making it a felony of the first degree to commit the crime of attempted felony murder. *See Mitchell v. State*, 830 So. 2d 944, 946 n.5 (Fla. 5th DCA 2002); *see also, Ashman v. Crosby*, Case No. 8:05-cv-31-T-26TBM, 2006 U.S. Dist. LEXIS 4352 (M.D. Fla., January 20, 2006) (rejecting claim that counsel provided ineffective assistance by failing to discover that attempted felony murder is not a crime in Florida).

*Claim Two*

As to claim two, Petitioner alleges that his counsel provided ineffective assistance in that he advised Petitioner he could be convicted as a principal when the State had not charged him as a principal. Specifically, Petitioner alleges:

> Defense counsel told [Petitioner] that if he proceeded to trial, he could be found guilty as a principal. Contrary to counsel's erroneous belief, the State charged that [Petitioner] acted as a "perpatrator" [sic] by repeatedly striking Torrance Schmitt about the head and body with a blunt instrument. . . . [Because Petitioner] was charged as acting alone without the benefit of a co-defendant, . . . in order to find [Petitioner] guilty on the "principal theory," the verdict from a jury would have been a constructive amendment of the information with due process forbids.

(Doc. No. 1, at 6 & 18).

In rejecting Petitioner's argument that counsel was ineffective in advising Petitioner that he could be convicted as a principal, the state court noted that "there was ample evidence" that Petitioner acted in concert with others in attacking the victim. (Appendix D at 11). Given the record evidence – which included statements of Petitioner's co-defendants that they watched Petitioner beat the victim – the state court found it was reasonable for counsel to advise Petitioner "that he could be convicted on a principal theory." (*Id.*) Again, this Court cannot find that the state court's application of *Strickland* was objectively unreasonable.[12]

---

[12]Indeed, in *Mitchell v. Esparza*, the United States Supreme Court held that an Ohio court's ruling that a defendant need not be identified in an indictment as a "principal offender" unless more than one defendant is named in the indictment, was not contrary to clearly established federal law. 540 U.S. 12, 14 (2003).

*Claim Three*

For his third claim, Petitioner alleges that counsel provided ineffective assistance by failing to object to the prosecutor's inaccurate recitation of the facts of Petitioner's crime. Specifically, at the plea hearing, the prosecutor stated that Petitioner repeatedly beat the victim with a crowbar, when in fact, Petitioner repeatedly beat the victim with a broomstick. According to Petitioner, he suffered prejudice due to counsel's failure to object to the prosecutor's misstatement because the court may "have rejected the plea" if the record had been corrected to reflect the weapon actually brandished by Petitioner. (Doc. No. 1 at 19). The state court squarely rejected this argument: "No reasonable probability exists that the Court would have rejected the [Petitioner's] plea had the prosecutor stated that [Petitioner] used a broomstick, rather than a crowbar, to strike the victim's head." (Appendix D at 12). The state court concluded that, under these circumstances, Petitioner could not establish prejudice under *Strickland*. This Court cannot find the foregoing analysis to be incorrect – let alone "objectively unreasonable." Thus, Petitioner cannot prevail on this claim.

*Claim Four*

In claim four, Petitioner alleges in a conclusory fashion that his counsel provided ineffective assistance by "coercing" him to enter a plea of nolo contendere to the charge of attempted premeditated murder. (Doc. No. 1 at 11). This claim fails because it is both conclusory and contrary to Petitioner's sworn testimony and his plea agreement.

14

Claim four is contradicted by Petitioner's signed written plea agreement as well as his sworn statements. The written plea agreement states that Petitioner's attorney promised him nothing to get Petitioner to enter his plea and that Petitioner's attorney did not pressure or force him to enter his plea. (Appendix A). At the plea and sentencing hearing, Petitioner confirmed that he was entering the plea agreement "freely and voluntarily" and that no one "forced, threatened, or promised" him anything. (*Id.* at 81). Thus, claim four is contrary to the signed plea agreement and Petitioner's sworn statements.

Claim four is also fatally conclusory. Petitioner fails to identify any specific comments or conduct by his attorney that were coercive. Petitioner alleges only that: "Although counsel was aware of the facts and circumstances of the case, he still coerced the [Petitioner] to plead nolo contendre [sic] to the charge [of attempted premeditated murder] and also failed to dismiss the charge." (Doc. No. 1 at 20). Such vague and conclusory allegations are inadequate as a matter of law to raise a cognizable claim of ineffective assistance of counsel. *See Strickland*, 466 U.S. at 690; *e.g., United States v. Cranshaw*, 817 F. Supp. 723, 728 (N.D. Ill. 1993), *aff'd without opinion*, 23 F.3d 410 (7th Cir. 1994); *United States v. Moya-Gomez*, 860 F.2d 706, 764 (7th Cir. 1988)(holding that petitioner "must identify the specific acts or omissions of counsel that form the basis for his claim of ineffective assistance"). For the foregoing reasons, Petitioner cannot prevail on his fourth claim.

*Claim Five*

Petitioner's final claim is that the cumulative effect of counsel's errors prejudiced the Petitioner. As noted above, Petitioner has established no prejudicial counsel error; thus, he cannot prevail on claim five.

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

*Conclusion*

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. The Petition for Writ of Habeas Corpus filed by Petitioner is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**. The Clerk of the Court shall enter judgment accordingly.

2. The Clerk of the Court is directed to close this case.

**DONE AND ORDERED** at Orlando, Florida, this 27 day of November, 2006.

G. KENDALL SHARP
SENIOR UNITED STATES DISTRICT JUDGE

Copies to:
pslc 11/24
Counsel of Record
Jason Julian Forde